IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCIS RIVARD, individually, and on behalf of all others similarly situated,<br><br>v.<br><br>TRIP MATE, INC., and UNITED STATES FIRE INSURANCE COMPANY<br><br>                        Defendants. | Case No._____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Francis Rivard ("Plaintiff" or "Rivard") alleges, on behalf of himself and all others similarly situated, upon personal knowledge as to himself and his acts and as to all other matters upon information and belief, as follows:

## NATURE OF THE ACTION

1. This is a class action for damages and restitution against Trip Mate, Inc. ("Trip Mate") and United States Fire Insurance Company ("U.S. Fire Insurance" (collectively "Defendants") arising from their wrongful conduct towards Plaintiff and other similarly situated insurance policyholders. Plaintiff, and the Class (defined below) he seeks to represent: (1) purchased a travel protection plan from Trip Mate which included an array of travel-related protections offering coverage for both pre- and post-departure perils; (2) whose insured travel plans were cancelled prior to departure; and (3) did not receive any *pro rata* refund for that portion of the gross policy premium which was paid exclusively for post-departure coverages that were unearned by Defendants because of the cancellation of those trips. Plaintiff and the Class he seeks to represent have suffered injury in the form of monetary loss and other harms because they paid

premiums for insurance coverages that could not materialize due to cancellation of their trips. Defendants were never exposed to, or assumed, any transferred risk of loss.

2. Travel insurance products provide reimbursement in the event of financial loss or hardship related to travel. Travel insurance is available to cover a wide array of perils associated with travel, including both pre-departure risks, such as the possibility that a traveler will lose pre-paid nonrefundable deposits or payments if a trip is canceled prior to departure, as well as risks that arise exclusively post-departure, such as interruption of a trip, medical or dental emergencies during a trip, and lost, stolen or damaged baggage. By its nature, this second category of coverages -- exclusively for post-departure risks -- is insurance coverage providing coverage for travel related perils that can only arise after travel is underway.

3. Trip Mate administers single trip travel insurance plans on behalf of U.S. Fire Insurance and other insurers. Travelers can purchase travel insurance from Trip Mate through several distribution channels, including from a travel agent (either online or traditional "brick-and-mortar"), and any Trip Mate travel partner.

4. U.S. Fire Insurance underwrites travel insurance policies sold by Trip Mate. *See* Francis Rivard's Travel Protection Plan documents ("Rivard Trip Mate Travel Protection Plan"), attached hereto as Exhibit A.

5. Defendants offers a variety of single-trip "Travel Protection Plans," which can include some or all of the travel insurance protections offered by Defendants. Typically, the more perils covered, the more expensive is the gross premium for all the policy coverages combined within a single plan.

6. The Travel Protection Plans sold by Defendants include travel insurance benefits that are applicable exclusively post-departure, meaning that Defendants are not at risk of having to cover the associated risks prior to commencement of actual travel by the insured.

7. When a customer purchases a Travel Protection Plan from Defendants, he or she receives "Plan Documents." The Plan Documents describe the terms and conditions of the purchased travel insurance for coverage when there is a sudden, unexpected problem or event before or during travel as well as any exclusions. The Schedule of Benefits delineates the different policy benefits the insured purchased through his or her particular Trip Mate Travel Protection Plan and the coverage limits of each corresponding benefit.

8. Defendants can readily identify the *pro rata* share of the gross premium which is attributable to each policy benefit purchased by each insured under that person's specific plan.

9. Defendants' Travel Protection Plans do not address how to handle premium refunds with respect to Defendants' legal obligation to refund any portion of the gross insurance premium that was paid in advance for specific post-departure coverages that were in fact never provided.

10. When a policy holder informs Defendants that his or her trip is cancelled for whatever reason, Defendants do not return the *pro rata* portion of the gross premium which the insured paid exclusively for coverage of post-departure risks – which risks are never assumed by, or transferred to Defendants, when his or her trip is cancelled prior to commencement of actual travel.

11. "If an insurer assumes no risk in a contract for insurance, then the insurer has suffered no bargained for detriment, and in the absence of that consideration the insured's premium must be returned." *Anderson v. Travelex Ins. Servs., Inc.*, No. 8:18-CV-362, 2019 WL 1932763, at *3 (D. Neb. May 1, 2019)

12. When an insured's trip is cancelled prior to departure, Defendants are obligated to return the portion of the premium paid for coverage of risks that are only applicable post-departure. This is because the portion of the gross premium paid in exchange for these exclusively post-departure benefits is unearned because Defendants were never at risk of having to cover the perils of actual travel.

13. The American Academy of Actuaries Travel Insurance Task Force found in its 2018 report that: "if a policy includes only benefits that cover postdeparture exposures (e.g., trip interruption, medical), there is no risk exposure between the policy purchase date and the departure date. Consequently, no premium should be earned for the pre-departure period." American Academy of Actuaries Travel Insurance Task Force, "Travel Insurance: An Actuarial Perspective," at 18 (Sept. 2018).[1]

14. Defendants did not provide any consideration in return for the portion of the gross premium connected with post-departure perils, which Defendants always require be paid in advance of travel.

15. Defendants' systematic failure to return the unused and unearned premium to purchasers of Trip Mate's Travel Protection Plans is unconscionable, unjust, and unlawful. Each member of the proposed Class (defined below) has been similarly injured financially by Defendants' misconduct and is entitled to restitution of the portion of the gross premium that Defendants accepted in exchange for insuring against post-departure risks, but for which they never provided any coverage (*i.e.*, assumed the specified risks) in return.

---

[1] https://www.actuary.org/sites/default/files/files/publications/TravelInsurance Monograph_09052018.pdf

## PARTIES

16. At all relevant times, Francis Rivard was (and continues to be) a citizen and resident of Michigan.

17. Defendant Trip Mate Insurance Services Inc. ("Trip Mate") is incorporated in Kansas and domiciled in Kansas City, Missouri. In 2019 Generali Global Assistance acquired Trip Mate. GGA is a divison of the Europ Assistance Group.

18. Defendant United States Fire Insurance Company's principal place of business is located in Morristown, NJ. It is licensed in all 50 states, DC, Virgin Islands and Puerto Rico and does business under Crum & Foster, a Fairfax Company. U.S. Fire Insurance underwrites Trip Mate Travel Protection Plans that are issued to insureds across the country.

## JURISDICTION AND VENUE

19. This Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005. Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) there are more than 100 Class members; (3) at least one member of the Class is diverse from the Defendants; and (4) the Defendants are not governmental entities.

20. Personal jurisdiction is proper as Defendants have purposefully availed themselves of the privilege of conducting business activities within this state. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims asserted herein occurred in this District. At all pertinent times, Defendants were (and remain) in the business of marketing, advertising, distributing, and selling travel insurance throughout this state and nationwide.

**FACTUAL ALLEGATIONS**

    A.    **Defendants' Travel Insurance Policies and Practices**

21. Defendants sell single-trip travel insurance policies. These policies are designed specifically to cover the perils associated with a specific trip.

22. Pursuant to an agreement executed between Trip Mate and U.S. Fire Insurance, Trip Mate is responsible for collecting and refunding premium payments in connection with the travel insurance underwritten by U.S. Fire Insurance. Trip Mate is the plan administrator.

23. Defendants' travel insurance policies are sold through numerous platforms. Consumers can purchase individual retail travel insurance coverage through, among others, travel agents, tour operators, cruise lines, or any of Trip Mate's travel partners.

24. Trip Mate offers a variety of Travel Protection Plans to different organizations each of which includes insurance benefits, and can also include non-insurance benefits as explained below. These Travel Protection Plans protect against perils for both pre-departure and post-departure events.

25. Pre-departure insurance coverage is often provided jointly by Defendants as "Trip Cancellation" insurance coverage, which is a common pre-departure coverage offered by Defendants.[2]

26. Other times, Trip Mate may provide pre-departure trip cancellation protection as a non-insurance benefit provided directly by the tour operator or provider.

27. For example, a Trip Mate Travel Protection Plan may include "Cancel for any Reason" coverage provided directly by the tour operator or provider. This benefit is not provided

---

[2] http://www.tripmate.com/plan/print_certificate/5F066314-787F-463D-825D-8BF4578B5AF6.

by the insurance company, but instead by the travel provider and allows consumers to cancel their trips and receive a refund for trip costs either in money or vouchers.

28. But -- the common denominator of Trip Mate's single-trip Travel Protection Plans (regardless of how the pre-departure protection is provided) is that they include at least one *insurance benefit* provided by Defendants covering a peril which can *only* arise post-departure and has zero possibility of ever occurring prior to commencement of the single insured trip.

29. The post-departure insurance coverages offered in Defendants' Travel Protection Plans include benefits for Trip Interruption, Missed Connection, Travel Delay, Medical Expense/Emergency Evacuation, Baggage and Personal Effects and Baggage Delay coverages.

30. The time for which various insurance coverage take effect differs depending on the type of coverage. For example, the pre-departure insurance coverage Trip Cancellation coverage begins "12:01 a.m. on the day after the date the appropriate payment for th[e] Plan is received."

31. Post-departure coverages, on the other hand, are not effective until the trip has commenced.

32. In the Travel Protection Plan sold to Plaintiff, the post-departure Trip Delay coverage does not commence until "after You have traveled 59 miles or more from home en route to join Your Trip." All other post-departure coverages begin "when You depart on the first Travel Arrangement (or alternate travel arrangement if You must use an alternate Travel Arrangement to reach Your Trip destination) for Your Trip." Regardless of the specific benefits offered, the coverage for post-departure benefits in Defendants' Travel Protection Plans expressly do not take effect until the trip begins.

33. Regardless of the purchase platform utilized, or the specific benefits included in any purchased Travel Protection Plan, Defendants, as a matter of standard course and practice, do

not refund any portion of the gross premium paid, including those premiums paid exclusively in exchange for post-departure coverage even when an insured does not commence the insured trip.

34. This practice is wrong. Defendants are not at risk of ever having to cover any post-departure perils until an insured begins his or her trip. When an insured trip is cancelled prior to departure, Defendants have neither accepted nor assumed any transferred risk of loss associated with post-departure perils, and as such, provide no consideration in exchange for, and have not earned, the premiums they have been paid to cover those particular risks. Therefore, when an insured's trip is cancelled prior to commencement, Defendants are required, but systematically fail, to return the *pro rata* portion of any gross premium already paid which represents the Defendants' charges for purportedly insuring against post-departure perils.

35. Indeed, Defendant provides no coverage for post-departure perils until the trip is actually commenced. Any coverage for post-departure perils prior to commencement of a trip is thus illusory and does not provide adequate consideration in exchange for a premium payment.

   **B.** **Allegations Related to Plaintiff**

36. On December 12, 2019, Plaintiff purchased a travel package from CIE Tours International ("CIE"), specifically, the CIE Scottish & Irish Gold 15/days/14 nights Land tour scheduled to occur in May 2020. He purchased the tour through his travel agent Aloha Travels for himself and his wife. Mr. Rivard paid $9,234 for the trip. This amount included the cost of the tour, airfare, travel, taxes and fees. The invoice included a website link to a page where Mr. Rivard could view his plan documents.

37. On the same day, Mr. Rivard purchased a Travel Protection Plan from Trip Mate, Plan Number F429C (the "Plan") for which he paid a total of $598.00 in premium, $299.00 each for his wife and himself.

38. The Travel Protection Plan that Mr. Rivard purchased included both pre and post-departure benefits. Part A of the Plan, "Cancel for Any Reason Waiver" was a non-insurance benefit provided by the travel provider CIE. Part B of the "Travel Protection Plan" was a single-trip travel insurance policy underwritten by US Fire Insurance.

39. Under Part A of Mr. Rivard's Trip Mate Travel Protection Plan, CIE agreed to reimburse Mr. Rivard in cash or in travel vouchers in the event Plaintiff cancelled his trip up to 24 hours prior to the scheduled trip departure for any of the reasons specified in the plan document.

40. Part B of Mr. Rivard's Trip Mate Travel Protection Plan provides post-departure insurance coverage exclusively, including the following coverages: (1) Trip Interruption; (2) Missed Connection; (3) Travel Delay; (4) Medical Expense/Emergency Evacuation; (5) Non-Medical Emergency Evacuation; (6) Accidental Death and Dismemberment; (7) Baggage and Personal Effects; and (8) Baggage Delay.

41. As discussed in above, the coverages for these post-departure perils did not take effect until commencement of the trip.

42. In or around March 2020, CIE cancelled the tour due to the COVID-19 pandemic.

43. CIE refunded $6,549.50 of the $9,234.00 total charge for the cancelled travel. However, it did not refund the remaining $2,685 of the costs of the cancelled travel.

44. Mr. Rivard contacted his travel agent for assistance with filing a claim under his Trip Mate Travel Protection Plan. His travel agent filed a claim with Trip Mate on his behalf due to CIE's cancellation of the tour for the remaining unrefunded trip costs.

45. Trip Mate responded to the claim in a letter from the Trip Mate, Inc. Claims Department dated May 21, 2020, stating that "the reason provided for [Mr. Rivard's] trip cancellation is not a Specified Reasons covered under the Cancel for Any Reason benefit offered by CIE Tours." The letter noted that CIE would provide a Cancel for Any Reason Waiver non-insurance benefit provided by CIE in form two travel certificates in the amount of $1,342.29 for each of the Rivards.

46. But, neither CIE nor Defendants ever refunded any premiums paid toward the Travel Protection Plan purchased by Plaintiff.

47. This was wrong. Because, Plaintiff never commenced his trip, the risks associated with post-departure perils never attached and none of the post-departure coverages were effective. Thus, there was no consideration for the portion of the premium paid for post-departure benefits. Therefore, Defendants were obligated to return that portion of the gross premium that Mr. Rivard paid for benefits exclusively covering post-departure risks.

48. Defendants' practice of failing to refund any portion of the premiums paid for post-departure benefits is systematic and uniform whenever an insured cancels an insured trip, or a trip is cancelled by the trip provider as occurred here, before he or she embarks on the trip.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated, on behalf of the proposed Class, initially defined as:

> All persons (including natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons) who while in the United States, or who as residents of the United States, purchased a single-trip Travel Protection Plan from Defendants that included any coverages applicable exclusively to post-departure risks, canceled their insured trip or their trip was canceled prior to the scheduled departure, and did not receive a refund

from Defendants for the insurance premium paid exclusively for post-departure benefits.

50. Excluded from the Class are Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly- or partly-owned subsidiaries or affiliates.

51. The number of persons who are members of the Class is so numerous that joinder of all members in one action is impracticable. The Class is reasonably estimated to be at least in the thousands. While the precise number, names, and addresses of all members of the Class are unknown to Plaintiff, such information is ascertainable from Defendants' records, including the identity of its insureds and the policies and coverages purchased.

52. The claims of the Class all derive directly from Defendants' single uniform policy of not refunding insurance premiums paid for post-departure benefits, whenever a trip is canceled prior to the scheduled departure.

53. The objective facts are the same for all Class members: a) each paid a gross premium to Defendants as consideration for a travel insurance plan with pre-bundled coverage options, which included coverage protection exclusively against post-departure travel risks; b) each canceled their insured trip or their trip was canceled prior to the scheduled departure; and, Defendants unconscionably, unjustly and unlawfully failed in that precise circumstance to ever return to each and every Class member the *pro rata* portion of the gross premium that was paid for exclusively post-departure benefits (whether or not requested by the Class member).

54. Defendants did not differentiate, in degree of care or candor, their actions or inactions among individual members of the Class regarding their failure to make *pro rata* refunds of unearned, risk-free premiums for post-departure perils that Defendants never actually insured because the trips were canceled before departure. The objective facts are the same for all members of the Class. Within each Claim for Relief asserted below by the respective Class, the same legal

standards govern resolution of the same operative facts existing across all members' individual claims.

55. Because the claims of each member of the Class have a common origin and share a common basis in terms of Defendants' systematic misconduct, there are common questions of fact and law which exist as to each Class member under Federal Rule of Civil Procedure 23(a)(2), and which predominate over any questions affecting only individual members under Federal Rule of Civil Procedure 23(b).

56. Substantial questions of fact and law that are common to all members of the Class, and which control this litigation and predominate over any individual issues, include the following:

   a) Whether Defendants, as a matter of course and policy, retained unearned, risk-free premiums paid exclusively for coverage of post-departure perils, whenever the purchaser of a Trip Mate Travel Protection Plan canceled his or her travel prior to his or her scheduled departure;

   b) Whether by virtue of the trip being cancelled prior to departure, Defendants faced no risk of having to cover post-departure perils and thus retained unearned premium;

   c) Whether by virtue of the of the trip being cancelled prior to departure, Defendants provided no consideration in exchange for the premiums paid exclusively for coverage of post-departure perils;

   d) Whether it would be unjust for Defendants to retain the *pro rata* portion of the gross premium paid exclusively for post-departure coverage, when an insured's trip is cancelled prior to departure; and

57. Plaintiff's claims are typical of the claims of the Class and arise from the same Defendants' uniform course of conduct against the Class as a whole. There are no conflicts between the interests of the named Plaintiff and the interests of the members of the Class. The relief Plaintiff seeks is typical of the relief sought for the members of the Class.

58. Plaintiff will fairly and adequately represent and protect the interests of the Class because of the common injury and interests of the members of the Class and the singular conduct

of Defendants that is, and was, applicable to all members of the Class. Plaintiff has retained counsel competent and experienced in class action litigation that will adequately represent and protect the interests of the members of the Class.

59. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) not only because common questions of fact and law predominate, but also because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

60. Plaintiff is also not aware of any management difficulties that would preclude maintenance of this litigation as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

## CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

61. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62. Defendants have been unjustly enriched at the expense of Plaintiff and other members of the Class as a result of Defendants' systematic and willful misconduct.

63.     Plaintiff and other members of the Class have conferred a benefit upon Defendants, in the form of unearned, risk-free premiums, and Defendants have appreciated and knowingly retained that benefit without lawful justification or excuse. Defendants will not return the unearned, risk-free premiums which they have deliberately retained absent this litigation.

64.     Whenever travel is canceled prior to commencement of the insured trip, Defendants' retention of the premiums paid for these post-departure benefits is unjust and inequitable because Defendants never assumed any risk of having to pay post-departure benefits to Plaintiff and other members of the Class.es Put simply, no coverage of any post-departure peril is ever transferred to or assumed by Defendants when a trip is cancelled, and thus, such coverage is wholly illusory since the *sine qua non* of post-departure travel insurance (irrespective of the type and level purchased within any particular Plan) is *actual travel* on the insured trip.

65.     Never having been placed at risk, Defendants' retention of these premiums is also unjust because they have provided no consideration in return for their retention of these premiums.

66.     Further, there is no lawful justification or excuse for Defendants' systematic and willful misconduct. The Travel Protection Plans executed by and between Plaintiff and other members of the Class, on the one hand, and Defendants, on the other, nowhere set forth the alleged right of Defendants to withhold refund of any premiums previously paid for post-departure benefits in the event that an insured needs to cancel his or her insured trip.

67.     Because Defendants do not give any consideration for the premiums which are allocable to post-departure benefits, even if any portion of the insurance contract purported to allow retention of premiums paid for exclusively post-departure benefits when an insured does not commence travel, this provision would be void and/or ineffective as a matter of law.

68. It would be inequitable for Defendants to retain the profits obtained from their wrongful conduct because retaining such profits would come at the expense of Plaintiff and other members of the Class who are entitled to a *pro rata* refund of their gross premium. Plaintiff and other members of the Class are entitled to restitution and/or disgorgement of all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that the Court:

A. Certify the Class defined herein pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and designate the Plaintiff as the representative of, and their undersigned counsel as Counsel for the Class;

B. Enter judgments against each of the Defendants and in favor of the Plaintiff and the Class predicated on Defendants' unjust enrichment;

C. Award Plaintiff and the Class actual and compensatory damages as allowed by law in an amount to be determined at trial;

D. Award Plaintiff and the Class restitution and/or disgorgement of ill-gotten gains, as appropriate;

E. Award Plaintiff and the Class attorneys' fees and costs of suit;

F. Award Plaintiff and the Class pre-judgment and post-judgment interest, as allowed by law;

I. Award Plaintiff and the Class injunctive relief, as appropriate; and

J. Award such further and additional relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, on behalf of himself and the proposed Class, demands a trial by jury on all issues so triable.

Dated: February 1, 2021

_____
BERGER MONTAGUE PC
Peter R. Kahana
Amey J. Park (NJ 070422014)
Y. Michael Twersky
1818 Market Street, Suite 3600
Philadelphia, PA.19103
Tel: (215) 875-3000
Fax: (215) 875-4604
pkahana@bm.net
apark@bm.net
mitwersky@bm.net

BERGER MONTAGUE PC
John G. Albanese
43 S.E. Main Street, Suite 505
Minneapolis, MN
55414
Tel:.(612) 594-5997
Fax:.(612) 584-4470
jalbanese@bm.net