UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **FRANCIS RIVARD,** | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | 1:21-cv-01625 |
| v. | : | |
| **TRIP MATE, INC. and UNITED STATES FIRE INSURANCE COMPANY** | : | Opinion |
| *Defendants*. | : | |

When his trip to Ireland was cancelled due to the COVID-19 pandemic, Plaintiff Francis Rivard ("Plaintiff") received a full refund through a trip protection plan that covered pre- and post-departure travel interruptions. Plaintiff filed this putative class action claiming that the insurance providers unjustly retained the portion of his premium that paid for the unused post-departure insurance. Plaintiff fails to state a claim, and the Court will grant the present motion to dismiss. [Dkt. 8].

### I. Introduction

Defendant Trip Mate, Inc. ("Trip Mate") administers and sells travel insurance policies to consumers "through numerous platforms." [Compl. ¶ 23]. As the administrator, Trip Mate "is responsible for collecting and refunding premium payments" in connection with these polices. [Compl. ¶ 22]. Defendant United States Fire Insurance Company ("U.S. Fire") underwrites these travel insurance policies. [*Id.*].

On December 12, 2019, Plaintiff used a travel agent to purchase a fifteen-day Irish vacation package organized by CIE Tours International ("CIE") for himself and his wife (the "Trip"). [Compl. ¶ 36]. Plaintiff paid $9,234 for the Trip, which was scheduled for May 2020.

1

[*Id.*].  Plaintiff also paid a $598.00 premium to purchase a Trip Mate Travel Protection Plan (the "Policy") for himself and his wife.  [Compl. ¶ 37].

The Policy is comprised of three parts.  Part A is a "Cancel for Any Reason Waiver" provided by CIE.  [Compl. ¶ 38].  Under this waiver "CIE agreed to reimburse Mr. Rivard in cash or travel vouchers in the event Plaintiff cancelled his trip up to 24 hours prior to the scheduled trip departure for any of the reasons specified in the [P]lan."  [Compl. ¶ 39].  The Court will refer to the benefit provided in Part A as the "Pre-Departure Benefit."  The Complaint does not allege that Plaintiff would have been protected by the Pre-Departure Benefit through CIE even if he did not purchase the Plan through Trip Mate.

Part B "provides post-departure insurance coverage exclusively."  [Compl. ¶ 40].  U.S. Fire underwrote Part B of the Plan.  [Compl. Exh. A at 5].  Part B covered "(1) Trip Interruption; (2) Missed Connection; (3) Travel Delay; (4) Medical Expense/Emergency Evacuation; (5) Non-Medical Emergency Evacuation; (6) Accidental Death and Dismemberment; (7) Baggage and Personal Effects; and (8) Baggage Delay."  [*Id.*].  The Court will refer to these benefits collectively as the "Post-Departure Benefits."  Part B provided that coverage for these contingencies would not commence until Plaintiff "depart[s] on the first Travel Arrangement…." [Compl. ¶¶ 32, 41].

Part B included a "Free Look Provision" that permitted Plaintiff to cancel the Policy in its entirety and obtain a refund within ten days of Plaintiffs' receipt of the policy.  The Free Look Provision states that

> [i]f You are not satisfied for any reason, You may return Your Plan
> Document to Your Travel Supplier within 10 days after receipt.
> Your plan payment will be refunded, provided You have not
> already departed on the Trip or filed a claim.  When so returned,
> the coverage under the Plan is void from the beginning.

2

[Compl. Exh. A at 5].  Plaintiff did not terminate the policy or ask for a refund within ten days of receipt of the Policy.

The third part of the Policy includes "non-insurance services" such as travel assistance and concierge services.  [Compl. Exh A at 19].  The Court will refer to these benefits as "Travel Services."

Approximately two months before Plaintiff's Trip was scheduled to begin, CIE cancelled the Trip due to the COVID-19 pandemic.  [Compl. ¶ 42].  Initially, CIE refunded $6,549.50 of the $9,234.00 that Plaintiff paid for the Trip but did not refund the remaining $2,685.  [Compl. ¶ 43].  Plaintiff contacted his travel agent who filed a claim with Trip Mate on Plaintiff's behalf.  [Compl. ¶ 44].

> Trip Mate responded to the claim in a letter from the Trip Mate, Inc. Claims Department dated May 21, 2020, stating that "the reason provided for [Mr. Rivard's] trip cancellation is not a Specified Reasons covered under the Cancel for Any Reason benefit offered by CIE Tours."  The letter noted that CIE would provide a Cancel for Any Reason Waiver non-insurance benefit provided by CIE in [the] form [of] two travel certificates in the amount of $1,342.29 for each [Plaintiff and his wife].

[Compl. ¶ 45].  Between cash and travel certificates, Plaintiff received refunds for the full value of the Trip.

Plaintiff believes that he is entitled to more. Plaintiff alleges that, because he received 100% of his refund by way of the *Pre-Departure Benefits*, he did not get what he paid for with respect to the *Post-Departure Benefits*.  [*See* Compl. ¶ 47].  More precisely, Plaintiff alleges that, because his Trip was cancelled before it "began," there was not even a risk that Defendants would have to provide any of the Post-Departure Benefits.  [*Id.*].  Plaintiff alleges that it is improper for Defendants to retain the portion of his Plan premium attributable to the Post-Departure Benefits absent any such risk.  [*Id.*].

3

Plaintiff filed this Complaint alleging one count of unjust enrichment against Defendants seeking to recover the "*pro rata* portion of the gross premium that was paid for exclusively post-departure benefits." [Compl. ¶ 53]. Plaintiff intends to represent a class of similarly-situated Trip Mate customers nationwide. [Compl. ¶ 49]. Defendants filed the present motion to dismiss. [Dkt. 8].

## II.    Jurisdiction

Plaintiff filed his Complaint pursuant to the Class Action Fairness Act, Pub. L. No. 109–2, 119 Stat. 4 (2005). The Court therefore has jurisdiction under 28 U.S.C. § 1331.

## III.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6). *See Chester Cnty Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d. Cir. 2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005))). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.*

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. Analysis

Defendants move to dismiss on two grounds. First, they argue that Plaintiff fails to state a claim for unjust enrichment. Second, they argue that, even if Plaintiff can state an unjust enrichment claim, he lacks standing to bring this claim on behalf of Plaintiffs who reside in states where Plaintiff has not suffered an injury. The Court agrees that Plaintiff fails to state an unjust enrichment claim, and therefore declines to consider Defendants' standing argument.

### a. Applicable Law

Before addressing the merits of Defendants' motion, the Court must address the threshold issue of which state's law applies to Plaintiff's unjust enrichment claim. Defendants assert that Michigan law governs this dispute because Defendants issued the Policy in Michigan, where Plaintiff resided when he purchased the Policy. [Dkt. 8-1 at 19 n.6]. To support this argument, Defendants point to language in the Policy which states that "all terms will be interpreted under the laws of the state in which the [Policy] was issued." [*Id.*]. Plaintiff responds that this Policy language does not control the analysis because Plaintiff does not assert a breach-of-contract claim. [Dkt. 17 at 17–18]. Plaintiff also argues that it is premature to determine which state's law applies and that Defendants have not identified a conflict between Michigan law and New Jersey law that requires to Court to decide the issue. [*Id.*].

The Court need not decide which state's law applies at this juncture because, as discussed below, Michigan law does not conflict with the law of any other interested state on relevant legal issues.[1]  *See P.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008) (noting that federal courts applying New Jersey's choice of law analysis must first "determine whether an actual conflict exists" between the law of the states with an interest in the claim); *On Air Ent. Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000) (noting that, where "there is no conflict of law … the court should avoid the choice of law question." (citation omitted))).  "The court can, therefore, refer interchangeably to the laws of [relevant states] in discussing the law applicable to the case."  *On Air Ent. Corp.*, 210 F.3d at 149.

### b. Does the Policy Bar Plaintiffs' Unjust Enrichment Claim?

The Complaint asserts a single claim for unjust enrichment against Defendants.  "An unjust enrichment claim requires plaintiff to allege '(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it.'"  *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (quoting *In re K–Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004)).

"An equitable claim of unjust enrichment is grounded on the theory that the law will imply a contract to prevent the unjust enrichment of another party."  *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 900 N.W.2d 650, 657 (Mich. Ct. App. 2017) (citing *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271 (Mich. Ct. App. 2003)); *Nat'l Amusements, Inc. v. N.J. Tpk. Auth.*, 619 A.2d 262, 267 (N.J Super. Ct. Law. Div. 1992), *aff'd*, 275 N.J. Super. 134, 645 A.2d 1194

---

[1] The parties appear to accept throughout their briefing that the only states whose law might apply to his case are Michigan and New Jersey.  [*See* Dkt. 20 at 9; Dkt. 17 at 17–18].  Thus, for the purposes of determining whether a conflict exists, the Court reviewed the law of New Jersey and Michigan to determine that no conflict exists.

(App. Div. 1994). However, "'a contract will be implied only if there is no express contract covering the same subject matter.'" *Landstar Express Am., Inc.*, 900 N.W.2d at 656 (quoting *Belle Isle Grill Corp.*, 666 N.W.2d 271); *Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, No. CIV. A. 07-1342 HAA, 2008 WL 482327, at *10 (D.N.J. Feb. 19, 2008) ("[W]here there is an express contract covering the identical subject matter of the claim, plaintiff cannot pursue a quasi-contractual claim for unjust enrichment." (quoting *St. Matthew's Baptist Church v. Wachovia Bank Nat'l Ass'n*, No. 04–4540, 2005 WL 1199045, at *7 (D.N.J. May 18, 2005))).

Defendants argue that the Policy bars Plaintiff's unjust enrichment claim because it is a contract between Plaintiff and Defendants that contemplates the same "subject matter" as Plaintiff's unjust enrichment claim. [Dkt. 8-1 at 19]. Plaintiff offers two responses. First, Plaintiff argues that the Policy does not cover the "subject matter" of his unjust enrichment claim because no language in the Policy addresses "whether unearned, risk-free premiums should be returned…." [Dkt. 17 at 21]. Second, Plaintiff argues that no enforceable contract exists with respect to the Post-Departure Benefits because Plaintiff did not receive consideration "for that portion of the divisible contract." [*Id.*]. The Court will address each of Plaintiff's responses in turn.

### i. "Subject Matter" of the Policy

The parties disagree as to whether the basis for Plaintiff's unjust enrichment claim is part of the Policy's "subject matter." Their dispute hinges whether a contract's subject matter is reducible to its express terms. Plaintiff argues that the Policy does not contemplate the subject matter of the present dispute because the Policy does not include language explicitly addressing "whether unearned, risk-free premiums should be returned…." [Dkt. 17 at 21]. Defendants argue that the Policy need not "expressly address[] or exclude[] a micro-issue in dispute, such as

the right to a specific type of partial refund" for disposition of Post-Departure Insurance premiums to be part of the Policy's subject matter. [Dkt. 20 at 10]. Thus, to determine whether the Policy includes Plaintiff's unjust enrichment theory as part of its "subject matter," the first question is whether a contract's "subject matter" can exceed or is limited to its express terms.

In the Court's view, a contract's subject matter concerns the nature of the contractual relationship between the parties more broadly than the contract's explicit terms. This conclusion finds ample support in case law. For example, in *Echols v. Pelullo*, the Third Circuit had to determine whether a boxer's exclusive contract with a fight promoter was indefinite as to a material provision, and therefore unenforceable, because the contract did not explicitly provide the boxer's per-fight compensation. 377 F.3d 272, 275–76 (3d Cir. 2004). The Third Circuit found that the contract was enforceable even though the contract omitted the compensation, which was a material term. *Id.* at 280. In so finding, the *Echols* court stated that

> [t]he fact that the agreement left open the compensation that would be payable under certain circumstances … did not affect the essential subject matter of the agreement … which is the exclusive nature of [the boxer's] relationship with [the promoter] and the services that [the promoter] has agreed to perform for [the boxer] in exchange for this exclusivity.

*Id.* at 278. Thus, the Third Circuit found that a contract's "subject matter" included the boxer's compensation even though the contract did not expressly state the amount due to the boxer under the contract. Although the Third Circuit did not consider "subject matter" in the context of an unjust enrichment claim, the Court finds that the *Echols* court's approach to a contract's "subject matter" is instructive.

The Court of Appeals of Michigan viewed a contract's subject matter similarly in *Sbr Associates. II, LLC v. AFJ Development Co., LLC*, No. 354992, 2021 WL 3233566, at *4 (Mich. Ct. App. July 29, 2021). The parties in that case entered confidentiality agreement before

9

discussing a partnership to develop a piece of land. *Id.* *1. The court found that the confidentiality agreement barred a plaintiff's unjust enrichment claim for "circumventing" the confidentiality agreement even though the contract did not expressly include a non-circumvention provision. *Id.* In rejecting the plaintiff's argument to the contrary, the court found that

> plaintiff conflates the subject matter of the Agreement with its terms. Plaintiff argues that the trial court concluded "that the written contract covers only one subject matter: confidentiality," so plaintiff's unjust enrichment claim pertaining to defendant's circumvention of plaintiff would not be covered. But confidentiality and circumvention both fall under the subject matter of the contract—the parties' actions in relation to the Kelly Property. Whether the contract included a confidentiality restriction and a non-circumvention restriction is an argument over the contract's terms, not over the contract's subject matter.

*Id.* at *4. Thus, the agreement's "subject matter" was broader than and not reducible to the specific terms included in the agreement. *See also Brawley v. United States*, 96 U.S. 168, 171 (1877) (distinguishing between the "subject-matter of a contract" and the "plain language" used in the contract); *In re Generali COVID-19 Travel Ins. Litig.*, No. 20-MD-2968 (JGK), 2021 WL 6052438, at *10 (S.D.N.Y. Dec. 21, 2021) ("But Florida and Pennsylvania do not require that a dispute be specifically addressed by a contract to preclude an unjust enrichment claim; they require only that a contract govern the subject matter of the dispute."); *Ochman v. Wyoming Seminary*, No. 3:12-CV-88, 2012 WL 5987133, at *5 (M.D. Pa. Nov. 29, 2012) (finding that a written school enrollment contract covered the same subject matter—"educational services"—as a separate implied-in-fact contract based on specific promises not included in the enrollment contract).

With the understanding that the Policy's "subject matter" is not limited to its express terms, the Court finds that Defendants' possible obligation to refund Plaintiff for the Post-

10

Departure Benefits is part of the Policy's subject matter.  The Policy established and insurer-insured relationship between Plaintiff and Defendants with respect to the Trip, and this relationship constitutes the Policy's "subject matter."  Whether the Policy requires Defendants to return a portion of the insurance premium "is an argument over the [Policy's] terms, not over the [Policy's] subject matter."  *Sbr Assocs. II, LLC*, 2021 WL 3233566, at *4; *see also In re Generali COVID-19 Travel Ins. Litig.*, 2021 WL 6052438, at *10 (finding under Florida and Pennsylvania law that analogous claims for travel insurance premium refunds were part of the "subject matter" of the travel insurance policy).  Thus, the Court rejects Plaintiff's argument that his unjust enrichment claim can proceed despite the Policy because it concerns different "subject matter" than the Policy.

### ii. Consideration and Enforceability

For an express contract to bar an unjust enrichment claim, the express contract must be enforceable.  *See MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733–34 (D.N.J. 2008) ("A quasi-contract claim cannot exist when there is an *enforceable* agreement between parties." (citing *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966))) (emphasis in original).

Plaintiff argues that, even if his claim concerning refundability of Post-Departure Benefits is part of the Policy's subject matter, the Policy does not bar his unjust enrichment claim because it did not establish an enforceable contract as to the Post-Departure Benefits.  Plaintiff argues that the Post-Departure Benefits portion of the Policy is unenforceable because he received no consideration in exchange for the portion of the total premium that he paid for the Post-Departure Benefits.  [Dkt. 17 at 21].  Plaintiff argues that

> in the insurance context, the consideration for payment of the
> premium is the attachment of the risks covered by the policy.

11

> Where the risks do not attach, there is no consideration. Here, Plaintiff never commenced the trip, and thus the risks associated with the post-departure benefits never attached.[2] Further, per the Plan language itself, the post-departure insurance coverage never even began. Thus, the post-departure coverage was completely illusory, Defendants have provided no consideration, and there is no valid contract for provision of post-departure benefits.

[Dkt. 17 at 27].

Plaintiff recognizes that he received some consideration for his premium, namely, the risk of loss assumed under the Pre-Departure Benefits and the refund that Plaintiff received under the Pre-Departure Benefits. But he maintains that he received this consideration only in exchange for the portion of his premium allocated to the Pre-Departure Benefits, and not for the portion of his premium allocated to the Post-Departure Benefits.

To succeed on this argument, Plaintiff must first show that the Policy is "divisible" into three separate policies: one for Pre-Departure Benefits, one for Post-Departure Benefits, and one for Travel Services. [Dkt. 17 at 27–28]. If Plaintiff cannot show that the Policy is divisible into three separate contracts, then he cannot show that Defendants failed to provide valuable consideration for one of these three contracts—namely, Part B of the Policy—and his enforceability argument crumbles.

A contract is divisible when "the contract clearly shows an intention of the parties that it should be considered as divisible." *City of Lansing v. Lansing Twp.*, 97 N.W.2d 804, 813 (Mich.

---

[2] The parties agree that an insurer provides consideration for an insurance premium when the insurer assumes the risk of the loss which the insurance policy will cover. [*See* Dkt. 20 at 15; Dkt. 17 at 18]. *See also Bolden v. Blue Cross & Blue Shield Ass'n*, 848 F.2d 201, 209 (D.C. Cir. 1988) ("'[A]n insured may not have any part of his premium returned once the risk attaches, even if it eventually turns out that the premium was in part unearned, unless there is an agreement to that effect.'" (quoting *N. N.Y. Savings Bank v. F.S.L.I.C.*, 515 F.2d 1355, 1359 (D.C. Cir. 1975))). However, they disagree as to *when* an insurer assumes a risk of loss, and whether Defendants assumed a risk of loss in this case. For the reasons discussed below, the Court need not reach this issue to decide the merits of Plaintiff's unjust enrichment claim.

12

1959). To determine the parties' intent, courts look first and foremost to the contract's plain language. *Dontzin v. Myer*, 694 A.2d 264, 267 (N.J. Super. Ct. App. Div. 1997); *Zurich Ins. Co. v. CCR & Co.*, 576 N.W.2d 392, 395 (Mich. Ct. App. 1997).

When determining whether parties intended a contract to be divisible, courts principally consider whether the contract explicitly divides the contract's performance into discrete parts and apportions consideration according to these divisions. *In re Nickels Midway Pier, LLC*, 255 F. App'x 633, 636 (3d Cir. 2007) ("Under New Jersey law, 'a contract is said to be divisible when performance is divided in two or more parts with a definite apportionment of the total consideration to each part.'" (quoting *Integrity Flooring v. Zandon Corp.*, 32 A.2d 507, 509 (N.J. 1943))). "If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject thereof may consist of several distinct and wholly independent items." *City of Lansing*, 97 N.W.2d at 813 (citing 12 Am. Jur., Contracts, § 317, pp. 872, 873)); *accord Dixon v. Smyth Sales Corp.*, 166 A. 103, 104 (N.J. 1933) ("If there be a single assent to a whole transaction involving several things or several kinds of property, a contract is always entire…."); *Monaghan v. Agric. Fire Ins. Co.*, 18 N.W. 797, 803 (Mich. 1884) (finding that an insurance contract was not divisible because the "premium was not apportioned, but was paid as a whole as a consideration of the whole insurance upon the property.").

Applying this law, the Policy was not a divisible contract because nothing in the Policy's plain language "clearly shows an intention of the parties that it should be considered as divisible." *City of Lansing*, 97 N.W.2d at 813. Plaintiff paid a "single and entire" premium in exchange for all of the Policy's benefits. *City of Lansing*, 97 N.W.2d at 813. While it may be possible to mathematically determine how much of Plaintiff's premium was attributable to each category of benefits Plaintiff purchased, the Policy's plain language did not provide "definite

apportionment of the total consideration to each part." *In re Nickels Midway Pier, LLC*, 255 F. App'x at 636.

Plaintiff's own arguments make this point abundantly clear. Rather than affirmatively identify the amount of money that Defendants unjustly retained, Plaintiff argues that the amount can be calculated now, long after Plaintiff purchased his Policy. [Dkt. 17 at 29]. But Plaintiff resorts to this argument because the Policy did not explicitly apportion Plaintiff's single premium payment on a *pro rata* basis for each of the three Policy benefits. Without more, the mere ability to calculate the portion of Plaintiff's premium that corresponds to the Policy's Post-Departure Benefits *after Plaintiff purchased the Policy* says nothing about Plaintiff's intent *when purchasing* the Policy or Defendants' intent *when selling* the Policy. *See In re Nickels Midway Pier, LLC*, 255 F. App'x at 636 (stating that intent for a contract to be divisible can be found where the contract expressly provides for "definite apportionment of the total consideration").

The Complaint also demonstrates that Plaintiff provided a "single assent" to the entire Policy even though the Policy contained several "distinct" components. *Dixon*, 166 A. at 104. The Complaint alleges that Plaintiff purchased a single trip protection package and paid a single price for that package. The Complaint does not allege that Plaintiff assented to each component of the Policy in multiple stages. And although the Policy required Trip Mate, CIE, and U.S. Fire to insure Plaintiff's Trip, the Complaint does not allege that Plaintiff negotiated separately with these parties or "assented" to an separate agreements with each party individually. Ultimately, Plaintiff assented to all terms of the Policy at the same time without providing separate assent to the individual insurers or for the individual Policy benefits. *Dixon*, 166 A. at 104 (noting that where contract language demonstrates intent "to take the whole or nothing … the contract would be entire.").

Language in Part B further supports the conclusion that the Policy is not divisible.  For example, the Free Look Provision states that

> [i]f You are not satisfied for any reason, You may return Your Plan Document to Your Travel Supplier within 10 days after receipt.  Your plan payment will be refunded, provided You have not already departed on the Trip or filed a claim.  When so returned, the coverage under the Plan is void from the beginning.

[Compl. Exh. A at 5].  Although the Free Look Provision is included in the part of the Policy which provides the Post-Departure Benefits, this provision offered an opportunity to "void" the entire Policy and promised a refund for the entire "plan payment," including the Pre-Departure Benefits and Travel Services.[3]  The Free Look Provision did not allow Plaintiff to pick and choose which benefits he wished to keep, obtain partial refunds, or "void" portions of the Policy.  Similarly, Part B instructs that provisions included therein are to be interpreted in light of terms and provisions included elsewhere in the Policy.[4]  This language from Part B demonstrates that, "when read and interpreted as a whole," the Policy provided a bundle of interrelated benefits rather than discrete and separately apportioned insurance policies, just as the parties intended.  *Laplace v. Laplace*, No. CIV.A. 03-4291JAG, 2006 WL 83110, at *6 (D.N.J. Jan. 12, 2006), *aff'd sub nom. Laplace v. Est. of Laplace ex rel. Laplace*, 220 F. App'x 69 (3d Cir. 2007); *Dixon*, 166 A. at 104.

It is noteworthy that Plaintiff does not argue or allege any facts or "circumstances" to dispute the Court's conclusions regarding the parties' intent.  *See In re Nickels Midway Pier*,

---

[3] Plaintiff agrees with this interpretation.  [*See* Dkt. 17 at 23 ("The 'Free Look' provision provides an opportunity to obtain a refund for premiums paid the day the policy is purchased.")].

[4] "Insurance provided by this Plan is subject to all of the terms and conditions of the Group Plan.  If there is a conflict between the Plan and this Plan Document, the Plan will govern." [Compl. Exh. A at 5].

*LLC*, 255 F. App'x at 636 ("The divisibility of a contract 'depends upon the intention of the parties as gathered from the agreement itself and the circumstances surrounding it.'" (quoting *Integrity Flooring*, 32 A.2d at 509)). For example, Plaintiff does not allege that he selected the Post-Departure Benefits—along with the Pre-Departure Benefits and Travel Services—from a menu of individually priced trip insurance options to assemble an insurance package for his Trip. Nor does he identify an amount that he believed that he paid in exchange for the Post-Departure benefits when he purchased the Policy as a whole, or a factual basis for that belief. Nor does he allege or argue that he purchased the Policy expecting to be refunded a portion of his premium if he received a refund pursuant to the Pre-Departure benefits, or identify a basis in fact or the Policy to support such an expectation. *See Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012) ("For an unjust enrichment claim to succeed, there must be a showing that the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." (citations and quotations omitted)). At bottom, Plaintiff fails to identify "circumstances" surrounding the Policy to show that Plaintiff intended to purchase something other than what he received, namely, "a travel protection plan with multiple features … in exchange for a single price." [Dkt. 8-1 at 11]; *Dixon*, 166 A. at 104 (noting that where contract language demonstrates intent "to take the whole or nothing … the contract would be entire.").

For this reason, Plaintiff's specific arguments for divisibility miss the mark. For example, the Complaint alleges that "Defendants can readily identify the *pro rata* share of the gross premium which is attributable to each policy benefit purchased by each insured." [Compl. ¶ 8]. Plaintiff further points out that Michigan statute requires policy providers to "delineate" the

16

different coverage items when selling trip insurance.[5] [Dkt. 17 at 29]. Michigan statute also requires insurers to report ""[r]eport as premium only the amount allocable to travel insurance and not any amounts received for travel assistance services or cancellation fee waivers" for tax purposes.[6] [Dkt. 17 at 29]. But the relevant inquiry for divisibility is not whether Defendants *can* identify the *pro-rata* share or *do* identify the *pro-rata* share in their books and records in order to comply with Michigan statute. Rather, the relevant question is whether the parties themselves clearly intended to allocate a "definite" portion of the premium for each benefit.

---

[5] Under Michigan Statute,

> Travel protection plans may be offered for 1 price for the combined features that the travel protection plan offers in this state if both of the following conditions are met:
>
> (a) The travel protection plan clearly discloses to the consumer at or before the time of purchase that it includes travel insurance, travel assistance services, and cancellation fee waivers, as applicable, and provides information and an opportunity at or before the time of purchase for the consumer to obtain additional information regarding the features and pricing of each.
>
> (b) The fulfillment materials do both of the following:
>
> *(i)* Describe and delineate the travel insurance, travel assistance services, and cancellation fee waivers in the travel protection plan.
>
> *(ii)* Include the travel insurance disclosures and the contact information for persons providing travel assistance services and cancellation fee waivers, as applicable.

Mich. Comp. Laws Ann. § 500.1287.

[6] Mich. Comp. Laws Ann. § 500.1285.

17

Plaintiff offers two additional arguments, both which fail. He argues that "[t]he coverages must be divisible because they are provided by two different entities, CIE and U.S. Fire." [Dkt. 17 at 28]. He further argues that "[e]ach of the coverages became 'effective' at different times. The cancellation waiver is effective upon receipt of payment to the tour operator. On the other hand, insured coverage for post-departure risks only begins upon departure itself." [Dkt. 17 at 28]. But the law is clear that where, as here, "the consideration to be paid is single and entire the contract must be held to be entire" even though the contract consists of "several distinct" components. *City of Lansing*, 97 N.W.2d at 813.

In sum, the Court finds that the Amended Complaint and the Policy's plain language do not demonstrate that the parties "clearly intended" for the Policy to be divisible. To find otherwise would require the Court to rewrite the Policy in Plaintiff's favor and violate a well-settled principle of contract law in the process. *See Laplace*, 2006 WL 83110, at *6 ("It is a 'well-established principle that it is not the function of the judiciary to change the obligations of an [agreement] which the parties have seen fit to make.'" (quoting 11 Williston on Contracts § 31:5 at 298–99)). Because the Policy is not divisible, and because Plaintiff received consideration in exchange for his premium, the Court rejects Plaintiff's argument that any portion of the Policy is unenforceable for lack of consideration. The Policy was enforceable and contemplated the same subject matter as Plaintiff's unjust enrichment claim, and therefore bars Plaintiff's unjust enrichment claim as a matter of law.

## V. Conclusion

For the reasons set forth above, the Court will grant Defendants' motion to dismiss. An appropriate order will follow.

February 28, 2022  /s/ Joseph H. Rodriguez, USDJ

Hon. Joseph H. Rodriguez, USDJ